# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

KING & BALLOW,                          )
                                     )
      **Plaintiff,**                          )
                                     )
**v.**                          )       **Civil No. 3:08-CV-1024**
                                     )       **Judge Aleta A. Trauger**
**MICHAEL S. THOMPSON,**                          )
                                     )
      **Defendant.**                          )

## MEMORANDUM AND ORDER TO SHOW CAUSE

Pending before the court is plaintiff King & Ballow's ("K&B") Motion to Reset Show Cause Hearing (Docket No. 142), to which *pro se* defendant Michael S. Thompson ("Thompson") has filed a Response (Docket No. 143), and K&B has filed a Reply (Docket No. 147). For the following reasons, the court will grant the Motion and set a show cause hearing.

## I.     The Action and Default Judgment

On October 21, 2008, K&B filed this action against Thompson.[1] K&B alleged that Thompson had retained it to provide legal services in a 2001 case captioned *Doane Pet Care Co. v. Thompson*, K&B had rendered those services, and Thompson had failed to pay K&B's bills. (Docket No. 1.) K&B sought, *inter alia*, compensatory damages in the amount of $186,067.57, pre-judgment interest, post-judgment interest, and attorney's fees. (*Id.*)

---

[1] This case has a tortured history. The court recites herein the basic facts necessary for the purposes of this Order to Show Cause. The Magistrate Judge's March 13, 2014 Report and Recommendation (Docket No. 96), discussed *infra*, contains an exhaustive review of the facts and procedural history of this matter, and the court incorporates the Magistrate Judge's detailed discussion herein.

Thompson failed to attend the initial case management conference before the Magistrate Judge, despite being expressly told to appear.  (Docket No. 9.)  Thereafter, K&B filed a proposed case management order, which the Magistrate Judge adopted.  (Docket Nos. 12, 13.)  On April 22, 2009, K&B filed a Motion to Compel Discovery Responses regarding K&B's interrogatories and requests for production of documents.  (Docket No. 14.)  Thompson did not respond.[2]  (Docket No. 15.)  On May 19, 2009, the Magistrate Judge granted the motion and ordered Thompson to serve responses to K&B's discovery requests by June 1, 2009.  (*Id*.)  The Magistrate Judge warned Thompson that "failure to comply with th[e] order and failure to timely serve discovery responses could result in the imposition of sanctions, pursuant to Rule 37(b)(2)(A)(i)-(vi) of the Federal Rules of Civil Procedure, including but not limited to striking the defendant's answer, entry of default judgment against the defendant, []or a finding that the defendant is in contempt."  (*Id*.)

On June 3, 2009, K&B filed a Motion to Strike Answer and for Entry of Default, based upon Thompson's failure to participate in discovery after the issuance of the Magistrate Judge's May 19, 2009 Order.  (Docket No. 16.)  K&B contended that, aside from submitting a one-page letter that the court deemed to be an Answer, Thompson had taken no action to defend or participate in this case.  (*Id*. at p. 2.)  On June 8, 2009, the Magistrate Judge issued an Order giving Thompson until June 22, 2009, to file a response or have the Answer stricken and default entered against him.  (Docket No. 17.)  Thompson did not respond to the June 8, 2009 Order. (Docket No. 20.)  On June 29, 2009, the Magistrate Judge issued an order (1) noting that

---

[2] Thompson also did not respond to K&B's requests for admission, but such failure did not require motion practice.  (*See* Docket No. 14.)

Thompson had "simply chosen to ignore his obligations under the Federal Rules of Civil Procedure to respond to properly propounded discovery," (2) striking Thompson's Answer, and (3) entering default against Thompson pursuant to Federal Rule of Civil Procedure 37. (*Id*. at pp. 2-3.)

On July 15, 2009, K&B moved for a default judgment. (Docket No. 21.) On July 20, 2009, Thompson filed a "Request for Continuation," seeking an additional seventy-five days to secure counsel. (Docket No. 27.) K&B filed a Response in opposition, noting that "[n]othing in [the] motion explain[ed] why [Thompson] could not have made at least some attempt to respond to [K&B's] written discovery and [the court's] discovery orders." (Docket No. 28.) On August 3, 2009, the Clerk of Court granted K&B's Motion for a Default Judgement. (Docket No. 32.) The Clerk awarded K&B the amount of $218,942.11, which represented the funds owed for services rendered on Thompson's behalf by K&B. (*Id*.) The Clerk, however, declined to award K&B the attorney's fees it sought; the Clerk stated that K&B should seek a discretionary award of attorney's fees from the court by means of a motion pursuant to Federal Rule of Civil Procedure 54(d)(2), as opposed to a Rule 54(b)(1) motion before the Clerk. (*Id*. at p. 2.)

On August 13, 2009, K&B filed a Motion to Alter or Amend Judgment that asked the court to include K&B's requested attorney's fees in the default judgment amount. (Docket No. 33.) On August 24, 2009, Thompson filed a "Motion for Continuation/Vacate Ruling," in which he sought additional time to "line up counsel." (Docket No. 37.) K&B filed a Response in opposition. (Docket No. 38.) After noting the "tortured history" of this case and "the defendant's participation/non-participation in it," the court denied Thompson's motion. (Docket No. 39.) In doing so, the court noted that Thompson "ha[d] repeatedly ignored court orders, not

3

secured representation after being given several chances to do so, not picked up certified mail sent by the court, and basically been inattentive to this case until a sizable default judgment was entered against him." (*Id*. at p. 3.) The court further concluded that the record could not "justify the granting of any further 'breaks' to Thompson." (*Id*.) The court granted K&B's Motion to Alter or Amend Judgment and increased the award to $278,725.48. (Docket No. 42.)

Thompson appealed the court's Order of Judgment to the U.S. Court of Appeals for the Sixth Circuit. (Docket No. 49.) On March 24, 2010, the Court of Appeals dismissed Thompson's appeal on the grounds that it was more than one month late. (Docket No. 56.)

## II.      Post-Judgment Discovery and the First Contempt Hearing Motion

As a judgment creditor, K&B served post-judgment discovery and document requests; Thompson did not respond. On March 26, 2010, K&B filed a Motion to Compel Answers to Post-Judgment Discovery. (Docket No. 57.) Thompson filed a Response, in which he (1) complained that K&B was not entitled to the payment it had been awarded, and (2) asked the court to prevent K&B from discovering what Thompson considered to be (a) irrelevant financial information and (b) information about joint marital assets. (Docket No. 61.) Thompson did not deny that he had failed to respond to the discovery requests, nor did he object to any specific discovery request. (*Id*.) On February 14, 2011, the Magistrate Judge found as follows:

> Although the plaintiff seeks detailed information, the [c]ourt cannot find that production of the requested documents would be either onerous or irrelevant. The plaintiff is not restricted to discovery of the defendant's financial status from the date of judgment forward since such discovery prior to the judgment could be relevant in any future collections efforts by the plaintiff. Although whether or not all of the defendant's assets are jointly held with his wife could be relevant to the plaintiff's ability to collect on the judgment, it is not relevant to consideration of the motion to compel. If the defendant's assets are jointly held with his wife, his wife's privacy interests must give way to the plaintiff's ability to engage in post-judgment discovery in accord with Rule 69(a)(2) of the Federal Rules of Civil Procedure.

(Docket No. 65 at p. 4.) Under Rule 34(b)(2), the Magistrate Judge ordered Thompson to serve K&B with copies of the requested documents within his possession, custody, or control (or produce such documents to plaintiff's counsel or a representative of plaintiff's counsel to inspect and copy the documents). (*Id*.) In addition, the Magistrate Judge specifically warned Thompson that "his failure to comply with this order could result in his being held in contempt of [c]ourt in accord with Rule 37(b)(2)(A)(vii) of the Federal Rules of Civil Procedure and an additional award of attorney's fees and costs incurred by the plaintiff as a result of the defendant's failure to comply with this order in accord with Rule 37(b)((2)(C)." (*Id*.)

On March 31, 2011, Thompson filed a Response to the Magistrate Judge's Order. (Docket No. 68.) In the Response, Thompson stated that (1) there had not been any assets in his name since 2003, (2) "further proof of documents" would be made available in the offices of Barley Snyder (a Lancaster, Pennsylvania law firm) on March 25, March 28, March 29, May 11, and May 13, 2011, at the cost of one dollar per page, and (3) the court should vacate the judgment against him and allow him seventy-five additional days to secure representation. (*Id*. at pp. 1-2.) Thompson's Response also sharply denigrated K&B. (*Id*.) Soon thereafter, K&B filed a Motion to Have Defendant Held in Civil Contempt ("First Contempt Hearing Motion"), based upon Thompson's failure to comply with the Magistrate Judge's February 14, 2011 Order

compelling Thompson to participate in post-judgment discovery.  (Docket No. 69.)  In the First Contempt Hearing Motion, K&B observed that Thompson had offered to provide the documents on three dates – March 25, 28, or 29, 2011 – which fell before the date of the offer (which was made on March 31, 2011).  (*Id*. at p. 2.)  Moreover, K&B averred that (1) it was informed by Barley Snyder that documents would not be made available on May 11 or May 13, 2011, and (2) neither Barley Snyder nor Thompson had communicated with K&B any further regarding the production of documents.  (*Id*. at pp. 2-3.)  K&B contended, therefore, that Thompson's March 31, 2011 statement to the court was a "complete misrepresentation."  (*Id*. at 3.)

On May 31, 2011, Thompson filed a Response to the First Hearing Contempt Motion. (Docket No. 71.)  Thompson stated that he was "shocked" to learn of the contempt request, given that he had provided K&B with five days on which the documents were available at the offices of Barley Snyder.  (*Id*. at p. 1.)  The Response did not address K&B's contention that the documents had not actually been made available on any of those days.  (*Id*.)  Rather, Thompson maintained that K&B had a "scheduled date" for inspection of the documents, but "made the decision not to attend and there is no reason to reschedule."  (*Id*.)  Moreover, in a rambling response laced with *ad hominem* attacks on K&B, Thompson declared that K&B was acting "spoiled" and pursuing an "unwarranted case."  (*Id*.)  Thompson urged the court to deny the First Contempt Hearing Motion and tell K&B to "try to go earn an honest living."  (*Id*. at p. 2.)

Prior to the Magistrate Judge's ruling on the First Contempt Hearing Motion, Thompson sent the Magistrate Judge a copy of an email from Thompson to K&B, which stated:

Financial records will be available at the offices of Barley Snyder, Lancaster, PA on the
following dates:
27 January 2012--10:00 AM
31 January 2012--10:00 AM
Let me know what date works for you.

(Docket No. 80 at p. 8.)  Based on this email, on January 13, 2012, the Magistrate Judge held

that:

> Setting aside the fact that it is entirely improper for the defendant or any
> litigant or counsel to communicate with the [c]ourt by email, the defendant
> has finally proposed additional dates.  As a result, the [c]ourt must deny the
> plaintiff's motion for contempt.  Although the [c]ourt is not inclined to give
> the defendant further "breaks," the plaintiff seeks to hold the defendant in
> civil contempt.  If the defendant were held in civil contempt, the [c]ourt
> could order that he be imprisoned until he purges himself of contempt or the
> [c]ourt could, as the plaintiff suggests, be ordered to pay a fine on a daily
> basis for each day that he does not comply with the [c]ourt's order holding
> him in contempt.  Inasmuch as the defendant appears to have now shown his
> willingness to comply with the previous court order, there is nothing that can
> be accomplished by having a hearing to determine if the defendant should be
> held in contempt.

(*Id.*)  However, the Magistrate Judge made denial of the First Contempt Hearing Motion

contingent upon several notable conditions.   First, within three calendar days Thompson had to

provide K&B with the name of the contact person in the law firm of Barley Snyder with whom

K&B could communicate.  (*Id.* at p. 9.)  Second, K&B was not required to pay any per page copy

fee.  (*Id.*)  Third, K&B would be permitted to use a copying service of its choice to retrieve, copy,

and return the documents at issue.  (*Id.*)   Fourth, the defendant's production had to include

documents responsive to <u>all</u> of the plaintiff's requests for production of documents.  (*Id.*)

In addition, the Magistrate Judge reiterated the warning first issued in the February 14, 2011

Order – namely, that:

failure to comply . . . and to have the documents available for the plaintiff's copying service to retrieve and copy the documents on the date selected will, upon any renewed motion by the plaintiff, subject the defendant to further sanctions and the scheduling of a show cause hearing to address why he should not be held in contempt of [c]ourt, and, if the defendant were held in contempt of [c]ourt, he could be subject to incarceration until he purges himself of contempt and/or civil penalties in the form of daily monetary assessments until the documents are produced.

(*Id.*)

## III.    **The Second Contempt Hearing Motion**

Less than one month later, K&B filed a Renewed Motion to Have Defendant Held in Civil Contempt ("Second Contempt Hearing Motion"), in which K&B argued that Thompson had (1) "completely ignored" the court's requirements for production of the documents and (2) "continued his obstructionist behavior in an attempt to evade his discovery obligations."  (Docket No. 84.)  K&B explained that it had arranged for a copying service to pick up the documents at Barley Snyder on January 27, 2012.  (Docket No. 85).  However, Thompson had sent an email to K&B stating that no documents would be made available on January 27, 2012, and that Thompson needed more time.  (*Id.*)  After being prompted by K&B, Thompson had promised that he would provide documents on January 31, 2012, at the premises of a bakery supplier that was remote from K&B's copying service.  K&B claimed that, on January 31, an employee of the bakery supplier informed K&B that Thompson had arrived without the documents on January 31, but would return with the documents on February 1, 2012.  (*Id.*)  According to K&B, Thompson subsequently advised K&B that he would bring the documents to the bakery supplier on February 3, 2012.  (*Id.*)  K&B spoke with Thompson at 4:30 p.m. on February 3, 2012, and Thompson refused to take the documents to the copying service.  (*Id.*)  It was too late in the day for the copying service to pick up any documents at the bakery supplier.  (*Id.*)  Accordingly, in the

Second Contempt Hearing Motion, K&B maintained that Thompson had disobeyed the Magistrate Judge by (1) not timely producing documents, (2) refusing to produce documents at Barley Snyder, (3) not identifying a contact person at Barley Snyder, and (4) refusing to produce documents at 10 a.m. for same-day copying. (Docket No. 84 at p. 2.) K&B argued that Thompson had deliberately "deceived the court with his January 13, 2012 email" and suggested that the court "[could] not believe anything [Thompson] says." (*Id*. at p. 4.) K&B requested that the court require Thompson to appear and show cause why he should not be held in contempt for misrepresentations to the court and refusal to comply with the court's instructions regarding document production. (*Id*.)

On September 24, 2012, the Magistrate Judge found that Thompson "did not produce the documents as ordered by the [c]ourt," and that "[t]he plaintiff was not obligated to retrieve the documents at the bakery at dates and times designated by the defendant." (Docket No. 89 at pp. 1-2.) The Magistrate Judge noted that "[t]he January 13, 2012, order was very clear about [Thompson's] obligations and was based on information that the defendant himself had provided the [c]ourt." (*Id*. at p. 2.) The Magistrate Judge granted the Second Contempt Hearing Motion to the extent that a hearing was scheduled, as requested by K&B, for Thompson to appear and show cause why he should not be held in contempt. The Magistrate Judge warned Thompson that "failure to appear on October 22, 2012 as directed could result in a bench warrant being issued . . . and the U.S Marshal taking [Thompson] into custody and transporting him to this District for further proceedings." (*Id*. at p. 1.)

Thompson failed to appear at the show cause hearing on October 22, 2012. (Docket Min. Entry, Oct. 22, 2012.) On that date, Thompson sent to the Magistrate Judge, as an attachment to

an email, a short "Response to Order and Request for Dismissal." (Docket No. 95.) This filing stated that Thompson was "not available to attend the hearing of 22 October 2012" and noted that "Defendant has neither the resources nor time to continue this ridiculous continued misuse of the court's and his time." (*Id*. at p. 1.) Thompson asserted that he has "offered on numerous occasions and made available the limited documents that [K&B] has requested," and claimed that K&B has been misusing the judicial system. (*Id*. at pp. 1-2.) K&B thereafter filed several Motions to Ascertain the Status of the First Contempt Hearing Motion and Second Contempt Hearing Motion. (Docket Nos. 92, 92.) Therein, K&B noted that Thompson had avoided responding to K&B's post-judgment discovery requests for over three and one-half years. (*Id*.)

## IV.   **The Magistrate Judge's Report and Recommendation**

On March 13, 2014, the Magistrate Judge issued a Report and Recommendation ("R&R") regarding the Second Contempt Hearing Motion. (Docket No. 96.) The Magistrate Judge noted that, although Thompson had already failed to appear for a show cause hearing before her, 28 U.S.C. § 636(e)(6)(B) requires that a contempt show cause hearing be specifically scheduled before a District Judge.[3] The Magistrate Judge, therefore, recommended that the court hold its own hearing for Thompson to appear and show cause as to why he should not be adjudged in contempt for failing to comply with the orders entered January 13, 2012 (Docket No. 81) and September 24, 2012 (Docket No. 89), and by failing to appear as ordered at the October 22, 2012

---

[3] In this context, therefore, the purpose of a report and recommendation is for a Magistrate Judge to "certify the facts" forming the basis of the commission of an act constituting civil contempt, under 28 U.S.C. § 636(e)(6)(B), so as to provide a basis for a District Judge to (1) order an individual to appear before the court and show cause as to why he or she should not be adjudged in contempt, (2) hear evidence as to the act(s) complained of, and (3) determine the appropriate punishment.

hearing.  The Magistrate Judge further recommended that, in the event Thompson does not appear for any further show cause hearing, the court issue a bench warrant for his arrest and appearance in this District.  (Docket No. 96 at p. 8.)

Thompson did not file objections to the R&R.  Instead, on May 5, 2014, Thompson twice filed an identical "Request for Sanity."  (Docket No. 99, 100.)  This document primarily consisted of complaints about the underlying case in which K&B had been awarded a default judgment several years earlier.  (*Id*. at pp. 1-3.)  Thompson also made additional unsupported claims regarding discovery.  Thompson stated that he had given K&B "a number of opportunities to view the information the court listed," and that K&B had "misrepresented the situation of information availability."  (*Id*. at p. 3.)  Thompson alleged that K&B had "shown no effort . . . to review the information," despite the fact that Thompson was "available on each of the dates and times outlined."  (*Id*.)  Thompson requested that the court "close this case and tell [K&B] to go home" because "[t]his ridiculous situation must come to an end."  (*Id*.)  Also on May 5, 2014, Thompson re-filed three documents: (1) "Request for Continuation/Vacate Ruling" (Docket No. 101), (2) Response to Order (Docket No. 102), and (3) Response to Order and Request for Dismissal (Docket No. 103).[4]  K&B responded to the Request for Sanity and other filings by noting that Thompson had not contradicted the Magistrate Judge's many rulings and findings of fact regarding Thompson's behavior vis-a-vis court orders and post-judgment discovery obligations.  (Docket No. 104 at pp. 1-2.)

On June 6, 2014, noting that no timely objections to the R&R had been filed, the court issued an Order to Show Cause.  (Docket No. 106.)  The court found that the R&R set forth "in

_____

[4] These documents were originally filed at Docket Nos. 37, 68, and 95, respectively.

great detail" Thompson's disregard for the proceedings of the case and "his continual ignoring of court orders." (*Id*. at p. 1.) Accordingly, the court concluded that "[t]he setting of a show cause hearing before the district court, which w[ould] give the defendant an opportunity to show cause why he should not be held in contempt, [wa]s fully justified." (*Id*.) The court ordered Thompson to appear on Thursday, July 24, 2014, at 1:30 p.m., in Nashville, Tennessee, to show cause as to why he should not be held in contempt for failing to comply with the Magistrate Judge's Orders entered January 13, 2012 and September 24, 2012 and for failing to appear as ordered at the October 22, 2012 hearing before the Magistrate Judge. (*Id*. at pp. 1-2.) Furthermore, the court warned Thompson that failure to appear at the hearing would "result in the issuance of a bench warrant for his arrest and appearance in this district, which w[ould] be executed by the United States Marshal's Service." (*Id*. at p. 2.)

On July 21, 2014, three days before the show cause hearing, Thompson filed a "Request for Preparation Time." (Docket No. 110.) The purpose of this filing was twofold. First, Thompson continued his ongoing discussion of the merits of the underlying case against him and requested a continuance of ninety days to secure representation to attack the four-year-old judgment against him. (*Id*. at pp. 1-4.) Second, Thompson informed the court that he would be "unable to travel to Nashville, TN the week of 21 July 2014 due to involvement in an annual Trade Show in Las Vegas and involvement with Japanese guests that cannot be rescheduled." (*Id*. at 1.) Thompson did not offer any statement as to subsequent availability. (*Id*.) On July 23, 2014, the court denied Thompson's "Request for Preparation Time," and admonished Thompson that if he did not appear at the hearing as scheduled, he "[would] suffer the consequences." (Docket No. 111 at p. 1.)

**V.**     <u>The Show Cause Hearing and the Third Contempt Hearing Motion</u>

The show cause hearing went ahead on July 24, 2014. The court allowed Thompson to participate by telephone. Thompson represented to the court that he was prepared to furnish the outstanding discovery and documents to K&B, and the court ordered that Thompson do so, at his own expense, by August 8, 2014. (Docket No. 114.) The court further ordered that, should Thompson fail to provide those items, the show cause hearing would be reset before the court.[5] (*Id.*)

On August 28, 2014, K&B filed a Renewed Motion to Have Defendant Held in Contempt and Request for Show Cause Hearing ("Third Contempt Hearing Motion"). (Docket No. 122.) In the Third Contempt Hearing Motion, K&B contended that discovery responses provided by Thompson on August 8, 2014 were "deficient in many respects." (*Id.* at p. 1.) K&B focused on two key areas of the post-judgment discovery: tax returns and sources of income. First, K&B highlighted that, despite the fact that its discovery request called for all tax returns from 2007 to the present, Thompson's response to the request was "None." (*Id.*) As evidence that Thompson was prevaricating, K&B offered correspondence from Thompson stating that his accountant had not yet completed 2011 through 2013 returns alongside evidence that Thompson received tax refunds from the U.S Treasury in 2012 and 2013. (*Id.* at p. 2.) K&B also highlighted that Thompson had offered no explanation as to his failure to produce tax returns from 2007, 2008, 2009, or 2010. (*Id.*) Second, K&B maintained that Thompson continued to refuse to produce

---

[5] On August 8, 2014, Thompson filed a "Petition to Open Default Judgment." (Docket No. 120.) K&B filed a Response in opposition, noting that the time for moving to set aside the default judgment had elapsed nearly five years prior to the filing. (Docket No. 121.) The court denied Thompson's request. (Docket No. 123.)

any document responsive to document request number twelve, which sought "all documents evidencing sources of present or future income [ ] Thompson has, from whatever source and wherever located, whether such sources are foreign or domestic." (*Id.*)  K&B stressed that Thompson does not deny that he has documentation of present income from the date of the document request until today, and noted that some of Thompson's bank records show he is receiving deposits of tens of thousands of dollars of income per month.  (*Id.*)  K&B contended that (1) documentation concerning income that is necessary for the preparation of tax returns and (2) filed tax returns should both have been readily available to Thompson over the course of the five years that K&B had sought post-judgment discovery.  (*Id.*)  K&B argued that Thompson should be held in contempt because he had reneged on his promise to the court to produce these documents by August 8, 2014.  (*Id.* at p. 3)

On August 29, 2014, the court granted the Third Contempt Hearing Motion and ordered Thompson to appear on Monday, September 22, 2014, at 3:00 p.m., in Nashville, Tennessee, to show cause as to why he should not be held in contempt for failing to comply with the court's Order issued July 25, 2014, as well as for failing to comply with the Magistrate Judge's Orders entered January 13, 2012 and September 24, 2012, and for failing to appear as ordered at the October 22, 2012 hearing before the Magistrate Judge.  (Docket No. 125.)  The court further ordered that Thompson had to appear in person; "no matter what the cause," Thompson would not be allowed to appear by telephone.  (*Id.* at p. 1.)  If Thompson had an unavoidable scheduling conflict, the court allowed for him to file a motion, no later than September 10, 2014, accompanied by an affidavit, executed under oath, that explained the reasons for the requested rescheduling.  (*Id.*)  Once again, the court warned Thompson that failure to appear at the hearing

would "result in the issuance of a bench warrant for his arrest and appearance in this district, which w[ould] be executed by the United States Marshal's Service." (*Id*. at pp. 1-2.)

On September 11, 2014, Thompson filed "Defendant's Responses to Plaintiff's Motion for Contempt Hearing." (Docket No. 127.) In this filing, Thompson made a number of vague statements about his financial situation and asserted that he had "fully complied" with K&B's discovery requests. (*Id*. at pp. 1-2.) In addition, Thompson stated that he had mailed all tax returns for the years 2007-2013 to K&B. (*Id*. at p. 2.) Under a subsection entitled "Income," Thompson (1) explained that he has a salaried position which is "inconsequential" to K&B and (2) made no offer to produce any documents concerning this present or future employment. (*Id*.) As to the show cause hearing, Thompson stated that it was "impossible" for him to appear due to "[s]cheduled meetings in regards to ongoing business, local legal proceedings and audit that require Defendant to be in Pennsylvania." (*Id*.) At the direction of the court, K&B filed a Reply. (Docket No. 129.) K&B represented that it had received no tax returns in the mail from Thompson. (*Id*. at pp. 1-2.) K&B also contended that the court's July 25 Order did not give Thompson discretion to make determinations as to whether documents concerning income were of "consequence" to K&B. (*Id*. at 2.) Finally, K&B noted that Thompson had not met the court's specific requirements for seeking a postponement of the show cause hearing. (*Id*.) On September 18, 2014, the Court denied Thompson's request for a postponement of the show cause hearing on the grounds that Thompson had failed to offer any documentation for his alleged conflicting commitments. (Docket No. 131.)

On September 19, 2014, Thompson filed "Defendant's Responses to Court's Denial for Contempt Hearing." (Docket No. 133.) In this document, Thompson made two major claims

regarding his compliance with the court's order to produce all responsive documents to K&B. First, Thompson stated that he had delivered unspecified documents to K&B on September 11, 2014. (*Id*. at p. 1.) In support of this assertion, Thompson attached a Federal Express tracking page that showed an unidentified shipment had been delivered to an unspecified location in Nashville, Tennessee. (*Id*. at Ex. B.) Second, Thompson stated that he had "complied with" court-ordered responses by September 17, 2014. (*Id*. at p. 1.) In support of this claim, Thompson attached a letter to counsel for K&B dated September 16, 2014 ("Sept. 16 Letter"). (*Id*. at Ex. C.) In the Sept. 16 Letter, Thompson (1) informed K&B that K&B was "in receipt of Tax Returns – 2007 – 2013" and (2) stated the belief that Thompson had "fully complied."[6] (*Id*.) In addition, Thompson restated the position that he needed to be in Pennsylvania in September and October of 2014 to attend to business matters related to ongoing litigation and tax audits. (*Id*. at pp. 1-2.) Finally, Thompson represented that he had "no assets" and could not afford the estimated $2,500 expense of a trip to Nashville for the show cause hearing. (*Id*. at p. 2.)

On September 19, 2014, the court continued the show cause hearing because Thompson had represented that "he ha[d] sent significant material to [K&B], including numerous tax returns." (Docket No. 134.) The court ordered K&B to review the materials sent by Thompson and either (1) request a resetting of the show cause hearing with specific information as to what further that K&B needed to execute upon the judgment or (2) provide a notice that a resetting of the show cause hearing was not necessary. (*Id*.)

## VI.    The Fourth Contempt Hearing Motion

---

[6] The Sept. 16 Letter also threatened K&B with a variety of punitive measures if it did not dismiss the five-year-old judgment against Thompson within one week. (*See* Docket No. 133, Ex. C.)

On September 29, 2014, K&B filed a Motion to Reset Show Cause Hearing ("Fourth Contempt Hearing Motion"). (Docket No. 142.) In the Fourth Contempt Hearing Motion, K&B makes four points in response to Thompson's assertion of poverty. First, K&B adduces evidence that Thompson lives in a home valued at over one million dollars. (*Id*. at 2; Ex. 1.) Second, K&B highlights evidence offered by Thompson himself that Thompson is paying for attorneys and accountants for services related to legal and IRS audit issues. (*Id*. at 2; Docket No. 133.) Third, K&B notes that Thompson travels extensively; his travel expenses in 2011 alone, for example, totaled $37,954. (Id. at 2; Ex. 2.) Finally, K&B suggests that even the fundamentally incomplete tax return information provided by Thompson indicates that Thompson is not impoverished to the point that he could not afford a flight to Nashville, Tennessee.

As to Thompson's document production, K&B contends that (1) Thompson has not, in fact, finally provided all of the documents that K&B has sought for five years, and (2) Thompson's contrary statements to the court are misrepresentations. (*Id*. at p. 1.) As an initial matter, K&B contends that Thompson's representation under oath to the court that he provided any tax returns to K&B on September 10, 2014 is false; K&B maintains that its evidence establishes that Thompson sent a limited subset of documents one week later, on September 17, 2014. (*Id*. at pp. 2-3.) Second, K&B highlights that the delivery from Thompson did not contain "[a]ll United States Income Tax Returns, with all attachments, filed by Michael S. Thompson . . . ," as required by document request number two, but, rather, only incomplete portions of those returns. (*Id*. at p. 3.) More specifically, according to K&B, the 2007-2013 tax returns "include only the two-page 1040 Forms and do not include any attachments whatsoever, such as the Schedules A, B, C, E, and SE that would have been filed with some or all of those 1040 Forms."

(*Id*.)  Additionally, K&B notes, the 1040 Forms indicate that there would have been W-2 forms and other non-IRS form attachments filed along with the returns; these were also not produced. (*Id*.)  K&B contends that it is only the full returns, and in particular attachments that provide information as to various sources of income, that will provide the necessary information to allow Plaintiff to execute on its judgment.[7]  (*Id*. at pp. 3-5.)  Specifically, K&B highlights the fact that Thompson's failure to produce W-2 forms with his tax returns means that K&B has been prevented from discovering information about the "salaried position" that Thompson has admitted to having in a court filing.[8]  (*Id*. at p. 8.)  In sum, K&B maintains that, if Thompson provides all of his tax returns with supporting documentation and all information regarding sources of income, K&B will have sufficient information to allow it to execute on the judgment. K&B urges the court to reset the show cause hearing and require Thompson to appear in court to comply with K&B's document requests.  (*Id*. at 9.)

On October 2, 2014, Thompson filed a Response to the Fourth Contempt Hearing Motion. (Docket No. 143.)  This filing is far from a model of clarity, contains Thompson's usual *ad hominem* attacks on counsel for K&B, and revisits irrelevant discussion of the underlying case that was long ago resolved against Thompson.  (*Id*. at pp. 1-5.)  As to the issue of his assertions of poverty, Thompson states that he is "low on funds," but provides no evidence to support that claim.  (*Id*. at p. 1.)  Thompson also states that his home is under foreclosure, but his evidence to support this claim is merely a notice of appearance by an attorney in a 2012 mortgage action.

---

[7] K&B indicates that Thompson's tax return schedules are responsive to numerous other document requests as well.  (Docket No. 142 at pp. 3-5.)

[8] Thompson has also to date failed to produce any other information regarding his "salaried position", such as check stubs or earning statements, as required by K&B's document requests.  (Docket No. 142 at p. 8.)

Thompson does not provide any other details about the nature of that action or its resolution, and he does not address K&B's evidence that Thompson still resides in the house in 2015. Finally, Thompson states that he travels often for his personal business and that his expenses are "well within the reasonable level to be expected from 12 or more trips annually." (*Id*. at p. 2.) Regarding tax returns, Thompson claims that he "has provided fully completed tax returns." (*Id*. at p. 2.) He does not mention the failure to produce all attachments to tax returns as called for by K&B's document requests. (*Id*.) Finally, Thompson again declares that his wage income on W-2 forms is "of no consequence to [K&B]."[9] (*Id*. at p. 3.)

## VII.  Conclusion

A default judgment was entered against Thompson in this matter over five and one-half years ago. Since that time, K&B has attempted to obtain basic discovery in an effort to execute upon that judgment. Because Thompson has proceeded *pro se*, he has been granted significant leeway by the Magistrate Judge and by this court. However, Thompson has taken that generosity for granted and thwarted the efficient progress of the discovery at multiple junctures. This has been made possible, in part, by Thompson's remote location. The record reflects that, when convenient for him, Thompson has simply ignored this court and its orders. The record further

---

[9] As discussed *supra*, K&B alleged that Thompson lied under oath when he represented to the court that he sent tax returns to K&B on September 10, 2014. Thompson has not refuted this claim in the body of his Response. Instead, Thompson attaches to the Response an Affidavit of Carole Bachert ("Bachert"), an employee of Lancaster Fine Foods, Inc. In the Affidavit, Bachert makes three representations: (1) on September 10, 2014, she sent an unspecified document overnight to the court in Nashville, (2) on September 10, she sent the same unspecified document to K&B in Nashville, and (3) on September 16, 2014, she sent unspecified documents to the court and K&B in Nashville. (Docket No. 143, Ex. 2.) This vague Affidavit is insufficient to refute K&B's claim, which is supported by a Federal Express receipt and dated documents. It would have been a simple matter for Thompson or Bachert to swear under oath that the tax returns were mailed on September 10 instead of September 16. They did not do so.

reflects that only when faced with severe sanctions does Thompson participate in this case at all, and then he does so just at the bare minimum level necessary to avoid being arrested, brought to this district, and held in civil contempt.

It is also clear to the court that Thompson continues to fundamentally misunderstand his obligations in this matter. The post-judgment document requests posed by K&B were straightforward and reasonable, and they were understandably focused upon identifying Thompson's sources of income. **There is no question that K&B is entitled to the production by Thompson of all documents responsive to its post-judgment discovery requests.** It is **not** Thompson's prerogative to, at his own discretion, provide K&B with a subset (*e.g.*, portions of tax returns) of those documents where a full set (*e.g.*, full tax returns with all attachments) is demanded. Likewise, it is **not** permissible for Thompson to arbitrarily conclude that certain documents (*e.g.*, W-2s and other documents pertaining to his salaried position) are "of no consequence" to K&B. Rather, it is Thompson's obligation to immediately produce to K&B all responsive documents.

The court is especially concerned about the actions that precipitated the Fourth Contempt Hearing Motion. First, there is significant doubt as to the veracity of Thompson's statement that he sent tax returns to K&B on September 10, 2014; there is no actual evidence for this claim, and K&B has provided evidence to the contrary. Second, Thompson fell woefully short of providing to K&B complete tax returns for 2007-2013. To the contrary, the few tax return pages produced by Thompson – without any supporting schedules or W-2s – appear to make a mockery of the purpose behind K&B's document request. Third, Thompson continues to blatantly refuse to produce documents concerning his sources of income, specifically his salaried position, on the

grounds that Thompson, in his sole judgment, has determined that this information is irrelevant to K&B's execution of its judgment. This is both wrong and unacceptable. Finally, given the information adduced by K&B, the court is not convinced that Thompson – a businessman with a salaried position and possession of a million dollar home – is so impoverished as to be unable to travel to Nashville, Tennessee for a court hearing.[10]

For these reasons, K&B's Fourth Contempt Hearing Motion (Docket No. 142) is **GRANTED**. It is hereby **ORDERED** that a show cause hearing will be held before this court on **MARCH 30, 2015, at 3:00 p.m**. **CST.** The defendant must appear in person; no matter what the cause, he will not be allowed to appear via telephone. If this date and time presents a scheduling problem for the defendant, he shall file a motion **BY MARCH 23, 2015,** requesting that the show cause hearing be rescheduled within a requested time frame, that (1) is accompanied by an affidavit, executed under oath, that explains the specific reasons for the requested rescheduling and (2) includes supporting documentation. A general or vague excuse without documentation, such as that offered by the defendant to this court on September 11, 2014 (Docket No. 127), will **NOT** be accepted.

At this hearing, Thompson **SHALL**:

(1)     Produce:

---

[10] In addition, the court notes that Thompson's estimate of $2,500 in expenses, including $1,200 in airfare, for attendance at a one-day court hearing in Nashville, Tennessee is wildly overstated.

(a) Copies of all tax returns for the years 2007 through 2013, whether such records are kept by Thompson or held on Thompson's behalf by any third party, **including all schedules and attachments of any kind**; and

(b) All documents evidencing sources of present or future income, from whatever source and wherever located, whether such sources are foreign or domestic, whether such records are kept by Thompson or held on Thompson's behalf by any third party, **including, but not limited to, W-2s, check stubs, or earnings statements related to any salaried position held from 2007 to the present.**

(2) Show cause why he should not be held in contempt for failure to comply with this court's Order issued July 24, 2014 (Docket No. 114), as well as his failure to comply with the Magistrate Judge's Orders entered January 13, 2012 (Docket No. 81) and September 24, 2012 (Docket No. 89) and for failing to appear as ordered at an October 22, 2012 hearing before the Magistrate Judge.[11]

**The defendant faces potential serious penalties for failure to appear at this hearing.**

**The defendant is FOREWARNED that his failure to appear at this hearing will result in the issuance of a bench warrant for his arrest and appearance in this district, which will be executed by the United States Marshal's Service.**

It is further **ORDERED** that the Clerk shall (1) serve a copy of this Memorandum and Order to Show Cause on the defendant by certified mail, return receipt requested, and (2) send a

---

[11] To hold a party to a proceeding in civil contempt, the proof must establish by clear and convincing evidence that the party violated a "definite and specific order of the court requiring him to perform . . . a particular act or acts with knowledge of the court's order." *Elec. Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (citing *Nat'l Labor Relations Bd. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987); *Glover v. Johnson*, 138 F.3d 299, 244 (6th Cir. 1998)). However, if the proof establishes that the defendant has violated a court order, the burden shifts to the defendant to show "categorically and in detail" why he is unable to comply with the order and that he took "all reasonable steps within [his] power to comply with the court's order." *Gary's Elec. Serv. Co.*, 340 F.3d at 379; *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996); *Pepper v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989). Willfulness is not an element of civil contempt, so the intent of a party to disobey a court order is "irrelevant to the validity of [a] contempt finding." *In re Jaques*, 761 F.2d 302, 306 (6th Cir. 1985).

copy to the defendant by email.[12]

It is so **ORDERED**.

Enter this 26th day of February 2015.

_____
ALETA A. TRAUGER
United States District Judge

---

[12] The court does not normally communicate with litigants by email. However, the defendant has made an occasional practice of refusing certified mail sent by the court. Because failure to attend the show cause hearing may result in the defendant's arrest, out of an abundance of caution, the court will communicate this order by email as well as certified mail. The fact that the court does so is not an invitation for the defendant to correspond with the court via email and the defendant should not do so. The defendant is well aware of how to utilize the court's electronic filing system.